1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6                          SAN JOSE DIVISION

7

8    TANIA MCCASH,                          Case No.  5:15-cv-02308-EJD

                    Plaintiff,
9                                           ORDER GRANTING IN PART AND
                                            DENYING IN PART DEFENDANTS'
10        v.                                MOTION FOR SUMMARY JUDGMENT

11   CENTRAL INTELLIGENCE AGENCY, et        Re: Dkt. No. 22
     al.,
12                  Defendants.

13        Plaintiff Tania McCash ("Plaintiff") brings this action under the Freedom of Information

14   Act, 5 U.S.C. § 552, against the National Security Agency ("NSA"), the Central Intelligence

15   Agency ("CIA"), and the Federal Bureau of Investigation ("FBI") (collectively, "Defendants")

16   seeking the disclosure and release of all agency records pertaining to her.  Compl. Dkt. No. 1.

17   Presently before the court is Defendants' Motion for Summary Judgment.  Def. Mot. for Summ.

18   Judg. ("Mot."), Dkt. No. 22.

19        Based on a careful review of the pleadings, and for the reasons stated below, Defendants'

20   Motion will be GRANTED IN PART and DENIED IN PART.

21   **I.    FACTUAL BACKGROUND**

22        Plaintiff Tania McCash is a resident of the state of California.  Compl. ¶ 3.  Pursuant to the

23   Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Plaintiff submitted requests to the CIA,

24   the NSA, and the FBI, seeking the disclosure of the respective agencies' records pertaining to her.

25   Compl. at ¶ 7.  Plaintiff alleges that Defendants conducted insufficient searches in response to her

26   FOIA request, and that the FBI improperly redacted and withheld potions of records that were

27                                          1

28   Case No.: 5:15-cv-02308-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
     SUMMARY JUDGMENT

1   identified as responsive.  Pl. Opp. to Mot. for Summ. Judg. ("Opp.") at 2-5, Dkt. No. 28.

2       **A.    The CIA**

3       On April 24, 2014, Plaintiff submitted a FOIA/Privacy Act request to the CIA, requesting

4   "a complete and thorough search of all filing systems and locations for all the records maintained

5   by [the CIA] pertaining to Tania McCash."  Declaration of Martha M. Lutz ("Lutz Decl.") ¶ 7,

6   Dkt. No. 23; Ex. A to Lutz Decl.

7       When the CIA receives a request, the request is analyzed by the Information and Privacy

8   Coordinator for Information Management Services ("IMS") to determine which CIA offices or

9   what kind of searches will be most likely to uncover responsive results.  Id. ¶ 15.  IMS

10  professionals conduct an initial search of accessible databases, and then determine if any of the

11  five CIA Directorates[1] need to conduct a further search for records.  Id.  Responsive records

12  maintained by the CIA fall within one of two broad categories: classified and unclassified.  Id.

13  ¶ 30.  Under certain exemptions, intelligence agencies may assert what is known as a "Glomar

14  Response" and neither confirm nor deny the existence or nonexistence of classified records in

15  connection with a FOIA request, as doing so could compromise national security information or

16  strategy.  Id. ¶ 30-34; Hunt v. CIA, 981 F.2d 1116, 1117-18 (9th Cir.1992) (providing that "an

17  agency may, pursuant to FOIA's statutory exemptions, refuse to confirm or deny the existence of

18  certain records in response to a FOIA request); Wilner v. Nat'l Sec. Agency, 592 F.3d 60, 68 (2d

19  Cir. 2009) ("The Glomar doctrine is well settled as a proper response to a FOIA request because it

20  is the only way in which an agency may assert that a particular FOIA statutory exemption covers

21  the 'existence or nonexistence of the requested records' in a case in which a plaintiff seeks such

22  records.")

23      The CIA followed the aforementioned procedure in response to Plaintiff's FOIA request.

24  ────────────────

25  [1] The CIA Directorates are responsible for fulfilling the clandestine mission of the CIA and help
    provide workforce support. The Directorates include: (1) the National Clandestine Service
26  ("NCS"), (2) the Directorate of Intelligence ("DI"), (3) the Directorate of Science and Technology
    ("DS&T"), (4) the Directorate of Support ("DS"), and the (5) Director of the CIA Area ("DIR
27  Area").  Id.  7-8.

2

28  Case No.: 5:15-cv-02308-EJD
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
    SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Lutz Decl. ¶¶ 15, 23-27.  Upon receipt of Plaintiff's request, IMS personnel "conducted a search

2    of previously released records," which produced no results.  Id. ¶ 23.  Given the information

3    sought by Plaintiff, and based on the initial search results, IMS then gave the case to two CIA

4    Directorates - the Directorate of Support ("DS") and the National Clandestine Service

5    ("NCS/DO") - for further investigation.  Id.  Both the DS and NCS/DO conducted searches of

6    their systems using the name "Tania McCash," but neither search located any record of an open or

7    acknowledged CIA affiliation.  Id. ¶¶ 24-25.  Accordingly, the CIA concluded that it did not locate

8    any unclassified records responsive to Plaintiff's request.  As to any other kinds of records,

9    pursuant to protocol, the CIA invoked a Glomar Response, maintaining that it could neither

10   confirm nor deny the existence of classified records pertaining to her.  Id. ¶ 28.  These results were

11   provided to Plaintiff in a letter from the CIA dated June 30, 2014.  Id. ¶ 9; Ex. D to Lutz Decl.

12          On July 22, 2014, Plaintiff appealed the CIA's determination arguing that it gave an

13   improper Glomar Response, which the CIA accepted on August 20, 2014.  Id. ¶¶ 10, 11; Exs. E, F

14   to Lutz Decl.  Plaintiff argued that because she had previously sent faxes to the CIA's Office of

15   Public Affairs, these records should have been located in the Agency's search.  Id.  Based on this

16   information, the IMS staff also conducted a supplemental search for records related to Plaintiff

17   within the Office of Public Affairs.  Id. ¶ 26.  The only records located by the CIA's supplemental

18   search were previous communications Plaintiff sent to the CIA  Id.  Thus, the CIA again

19   concluded that, other than communications from Plaintiff, "no records were located that reflect[ed]

20   an open and acknowledged association between the subject of the request, Tania McCash, and the

21   CIA."  The CIA's Agency Release Panel denied Plaintiff's appeal on January 28, 2015.  Id. ¶ 12;

22   Ex. G to Lutz Decl.

23          **B.    The NSA**

24          On April 24, 2014, Plaintiff also submitted a FOIA request to the NSA, requesting "a

25   complete and thorough search of all filing systems and locations for all the records maintained by

26   [the NSA] pertaining to Tania McCash."  Decl. of Renee Kuntz ("Kuntz Decl.") ¶ 10, Dkt. No. 25;

27

28   Case No.: 5:15-cv-02308-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
     SUMMARY JUDGMENT

1   Ex. 1 to Kutz Decl.

2          Upon receipt of a FOIA request, the NSA's FOIA office contacts the NSA's Office of

3   Security and directs it to conduct a search for "non-intelligence records" related to the request.

4   Supp. Decl. of Renee Kuntz, ("Supp. Kuntz Decl.") ¶ 2, Dkt. No. 32.  If a requester provides any

5   "amplifying information," such as a specific indication that he or she has had previous contact

6   with a specific NSA office, the NSA can use that information to refine and direct its search to a

7   specific database or office.  Id.  In cases without amplifying information, the NSA conducts a

8   general search for personnel records in the PeopleSoft Master Index ("PeopleSoft") database,

9   using the requester's name and social security number.  Id.  The PeopleSoft database is the

10  "central repository for all records on current and former NSA affiliates," including records on

11  employees, visitors, contractors, military assignees, and applicants, as well as security, medical

12  and training records.  Id. ¶ 3; Kuntz Decl. ¶¶ 31-33.  Given the database's comprehensiveness, if a

13  PeopleSoft search returns no results, the NSA maintains it is unlikely that the Agency possesses

14  any non-intelligence records on the individual.  Supp. Kuntz Decl. ¶ 3; Kuntz Decl. ¶ 34.  Similar

15  to the CIA, the NSA is exempt from sharing whether it possesses classified records under FOIA

16  exception (b)(1).  5 U.S.C. § 552 (b)(1).  See Supp. Kuntz Decl. ¶ 1; Kuntz Decl. ¶¶ 11, 14.

17         The NSA followed the aforementioned protocol in Plaintiff's case.  Suppl. Kuntz Decl. ¶¶

18  2-4.  Plaintiff did not provide the NSA with "amplifying information" in her request, so the NSA

19  conducted "affiliate" searches in the PeopleSoft database using Plaintiff's name and social security

20  number.  Id. ¶ 2.  No records resulted from the PeopleSoft searches.  Id. ¶ 4.  Consequently, the

21  NSA concluded that it likely did not maintain any unclassified records on Plaintiff.  Id. ¶ 3.  The

22  NSA did not specifically search for prior correspondences from Plaintiff because Plaintiff did not

23  request that it do so in her initial FOIA request or her appeal.  Suppl. Kuntz Decl. ¶ 2.  Under NSA

24  protocol, the Agency "does not typically interpret generic 'records on me' requests to include

25  records that the requester generated," rather, the requester must specifically ask for

26  correspondences to be included in the search.  Id.

27

28  Case No.: 5:15-cv-02308-EJD
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
    SUMMARY JUDGMENT

4

The NSA informed Plaintiff of its conclusions by a letter dated May 21, 2014.  Kuntz Decl. ¶ 11; Ex. 2 to Kuntz Decl.  The NSA also informed Plaintiff that it could neither confirm nor deny the existence of any classified records pertaining to her.  Id.  Plaintiff appealed the decision to the NSA's FOIA Appeals program on June 26, 2014, asserting that that the NSA's "Glomar response as well as the invocation of Exemptions (b)(1) and (b)(3)" were "inappropriate in this case."  Id. ¶ 12; Ex. 3 to Kuntz Decl.  The NSA acknowledged Plaintiff's appeal in a letter dated July 15, 2014, however, Plaintiff filed the instant action before the NSA was able to fully adjudicate the appeal.  Id ¶ 13; see Ex. 4 to Kuntz Decl.

### C.   The FBI

Finally, also on April 24, 2014, Plaintiff submitted a FOIA/Privacy Act request to the FBI, seeking access to, and copies of, any records it had pertaining to her.  Decl. of David Hardy ("Hardy Decl.") ¶ 5, Dkt. No. 24; Ex. A to Hardy Decl.

In response to Plaintiff's request, the FBI conducted three different searches in an effort to locate responsive records: (1) an automated search of its Central Records System ("CRS"), using the Automated Case Support ("ACS") system; (2) a subsequent search of the CRS employing the "Sentinel index" search; and (3) an automated search of its electronic surveillance system ("ELSUR") indices.  Mot. at 6; Hardy Decl. ¶ 26-29.  The CRS is the FBI's system of records that consists of administrative, personnel, applicant, investigative, intelligence, and general files across the entire organization worldwide.  Hardy Decl. ¶¶ 16, 20, 22, 23.   The ELSUR indices contain "records related to electronic surveillance sought, administered, and/or conducted by the FBI since January 1, 1960."  Hardy Decl. ¶¶ 23, 29.

The FBI searched the CRS and the ELSUR for the name "Tania R. McCash" and "Tania McCash" in order to identify files potentially responsive to Plaintiff's inquiry.  Id. ¶¶ 27-29.  The FBI also conducted three-way phonetic breakdown searches for Plaintiff's first, middle, and last name, as well as used her date of birth, social security number, and any other "special information provided by Plaintiff to facilitate the identification of responsive records."  Id.

Case No.: 5:15-cv-02308-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

After its initial searches of the CRS and the ELSUR, the FBI was unable to identify responsive records pertaining to Plaintiff.  Id. ¶ 7; Ex. C to Hardy Decl.  However, in response to additional information, the FBI also conducted a supplemental search of the CRS for "cross reference records," using the Sentinel index and variations of Plaintiff's name and identifying information.  Id. ¶¶ 16, 20-23, 26-29.  As a result, the FBI located three cross-reference files containing information responsive to Plaintiff's request, amounting to a total of 44 pages of documents.  Id.  The FBI determined that the responsive records were made up of "complaints made by Plaintiff on various subjects," and the FBI's responses thereto.  Id.  Specifically, the FBI identified: file 62F-SF-C128988, which "consists of a complaint lodged by Plaintiff and the FBI's subsequent abbreviated background check of Plaintiff"; file 263-HQ-0, which "consists of Plaintiff's Office of the Inspector General (OIG) complaint against a third party FBI employee;" and file 62-SF-0, which "consists of Plaintiff's claims that she had knowledge and evidence of a security breach."  Id. ¶ 28 n. 9.  The FBI informed Plaintiff of these results on August 25, 2015. Hardy Decl. ¶¶ 8-15, 27-29, 31-32; Exs. D-J to Hardy Decl.  Of the 44 pages the FBI identified as responsive, ten pages were released to Plaintiff in full, 32 pages were released with partial redactions, and two pages were withheld in full.  Id. ¶ 4.  The FBI determined that all information it elected to withhold was covered by one or more FOIA exemption.  Id. ¶ 15.

On May 22, 2015, Plaintiff filed the instant action under FOIA, 5 U.S.C. § 552, against Defendants, seeking injunctive relief and demanding the disclosure of records about herself allegedly maintained by Defendants.

## II.    LEGAL STANDARD

### A.    Summary Judgement

A motion for summary judgment or partial summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A fact is material when, under governing substantive law, it could affect the outcome of the case.

Case No.: 5:15-cv-02308-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets this initial burden, the burden then shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.  The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  *Celotex*, 477 U.S. at 324.  However, the mere suggestion that facts are in controversy, or conclusory and speculative testimony in affidavits and moving papers, is insufficient to defeat summary judgment.  See *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

Where the nonmoving party will have the burden of proof at trial on an issue, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  Provided there has been adequate time for discovery, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case.  Id. at 322-23.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

**B.    Summary Judgement in FOIA Cases**

The Freedom of Information Act of 1966 ("FOIA") was enacted out of concerns about the growth of government secrecy.  5 U.S.C.A. § 552.  The purpose of FOIA is to clarify and protect the public's right to information.  Id.  FOIA requires that records be made available to any person, and that an agency seeking to withhold a record shows that the information contained in the record falls within one of nine limited statutory exemptions.  Id.  The Supreme Court has held that FOIA represents the general philosophy of full agency disclosure unless information is exempted under

United States District Court
Northern District of California

7

1    clearly delineated statutory language.  In Bibles v. Oregon Natural Desert Ass'n, 519 U.S. 355

2    (1997).

3         Courts faced with a motion for summary judgement in a FOIA case must conduct a two-

4    step inquiry.  Berman v. CIA, 501 F.3d 1136, 1139 (9th Cir. 2007).  The first step assesses

5    whether the agency involved met its investigative obligations under FOIA.  Zemansky v. U.S.

6    E.P.A., 767 F.2d 569, 571 (9th Cir. 1985).  An agency can prove that it met its obligations by

7    showing that it conducted a search "reasonably calculated" to uncover all relevant documents

8    requested under FOIA.  Morley v. CIA, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (citing Weisberg v.

9    U.S. Dep't of Justice, 705 F.2d 1344, 1350-1351 (D.C. Cir. 1983)).   The second step requires the

10   court to consider whether the agency has adequately demonstrated that any information not

11   disclosed to the FOIA requester is protected by at least one of the enumerated exemptions.

12   Hamdan v. U.S. Dept. of Justice, 797 F.3d 759, 769 (9th Cir. 2015).

13       **C.    Pro Se Pleadings**

14        Pleadings filed by pro se plaintiffs must be "construed liberally."  Resnick v. Hayes, 213

15   F.3d 443, 447 (9th Cir. 2000).  In order to do so, the court "need not give a plaintiff the benefit of

16   every conceivable doubt," but must "draw every reasonable or warranted factual inference in the

17   plaintiff's favor."  McKinney v. De Board, 507 F.2d 501, 504 (9th Cir. 1974).  Courts must use

18   common sense when interpreting the often unclear pleadings from pro se plaintiffs.  Id.  Although

19   pro se litigants are held to "less stringent standards," they are not exempt from "complying with

20   the procedural and substantive rules of the court" and must "comply strictly with the summary

21   judgment rules."  Haines v. Kerner, 404 U.S. 519, 520 (1972); Thomas v. Ponder, 611 F.3d 1144,

22   1150 (9th Cir. 2010) (citing Bias v. Moynihan, 508 F.3d 1212, 1219 (9th Cir. 2007)).

23   **III.   DISCUSSION**

24        Plaintiff challenges the adequacy of all Defendants' searches in connection with her FOIA

25   requests.  Opp. at 2-5.  Plaintiff also contends that the CIA and the NSA improperly asserted

26   Glomar Responses with respect to the existence or nonexistence of any classified records, and that

27

28   Case No.: 5:15-cv-02308-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
     SUMMARY JUDGMENT

United States District Court
Northern District of California

the FBI improperly withheld certain responsive records, in whole or in part, pursuant to various FOIA exemptions.  Id.

### A.    Adequacy of the Agencies' Searches

When the adequacy of an agency's FOIA records search is challenged, the agency "must show beyond material doubt…that it has conducted a search reasonably calculated to uncover all relevant documents."  Schoenman v. FBI, 764 F. Supp. 2d 40, 45 (D.C.C. January 21, 2011) (citing Weisberg, 705 F.2d at 1351).  A search for records found to be inadequate is considered an "improper withholding" under FOIA.  Id.  The analysis of adequacy is guided by a "standard of reasonableness," and is "dependent upon the circumstances of the case."  McGehee v. CIA, 697 F.2d 1095, 1100–01 (D.C. Cir. 1983); Weisberg, 705 F.2d at 135; see Hamdan, 797 F.3d at 772 ("Plaintiffs were entitled to a reasonable search for records, not a perfect one").

In evaluating the adequacy of a search done by a government agency, courts may rely on declarations and affidavits submitted by the agency, so long as the affidavits are "relatively detailed, non-conclusory, and ... submitted in good faith."  Papa v. U.S., 281 F.3d 1004, 1013 (9th Cir. 2002) (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)).  Affidavits submitted by an agency to demonstrate the adequacy of its response are presumed to be in good faith.  Hamdan, 797 F.3d at 770 (citing Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C.Cir. 1981).  The court is tasked with determining if the agency conducted a sufficient search for the documents requested, not determining if the documents requested actually exist.  Perry v. Block, 684 F.2d 121, 128 (D.C.Cir. 1982).

### i.    The CIA

In regards to the CIA, Plaintiff contends that the Agency's search for records pertaining to her was inadequate because if the CIA had conducted a sufficient search of its records, it would have produced recent communications she sent via email, fax, and letter.  Opp. at 3; Decl. of Tania McCash ("McCash Decl."), ¶ 6, Dkt. No. 29.  Plaintiff asserts that it is therefore "inconceivable" that a thorough search would not have identified records generated in response to such

United States District Court
Northern District of California

communications.  Opp. at 3.

The fact that the search conducted by the CIA did not produce the prior correspondences from Plaintiff to the Agency does not, absent more, render the search inadequate.  The CIA provided the court with a comprehensive declaration, explaining the process and specifics of the searches it conducted in response to Plaintiff's request.  See Lutz Decl. ¶¶ 23-27.  The declaration details the standard procedure the Agency uses when responding to FOIA requests, and explains how such procedures were employed in this case.  Specifically, the CIA's declaration offers details regarding (1) the initial search conducted by IMS personnel of accessible databases, (2) the subsequent searches conducted by two CIA Directorates, the DS and the NCS/DO, (3) the supplemental search conducted within the Office of Public Affairs, and (4) the terms that the Agency used to execute the searches.  Id. ¶¶ 23-26.

As a result of these searches, the CIA found no records other than the communications Plaintiff herself generated by contacting the Agency.  Id. ¶ 26.  The CIA's failure to identify or flag these communications as responsive to Plaintiff's FOIA request does not suggest that the entirety of the search itself was inadequate.  Indeed, because "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search, the mere fact that a particular document was not found does not demonstrate the inadequacy of a search."  Schoenman, 764 F. Supp. 2d at 45 (internal quotations omitted); see  Citizens Com'n on Human Rights v. Food & Drug Admin, 45 F.3d 1325, 1328 (9th Cir. 1995) (stating that the issue in a FOIA case is "not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."); Lawyers' Comm. for Civil Rights of San Francisco Bay Area v. U.S. Dep't. of the Treasury, 534 F. Supp. 2d 1126, 1137 (N.D. Cal. 2008) (explaining that "an agency's failure to turn up a particular document or mere speculation that an uncovered document might exist will not undermine the determination that an agency conducted an adequate search for requested records.").

Case No.: 5:15-cv-02308-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

United States District Court
Northern District of California

Based on the foregoing, the court finds that the CIA discharged its burden of establishing that the search conducted was reasonably calculated to uncover documents relevant and responsive to Plaintiff's request, and was therefore adequate under FOIA.  Accordingly, Defendant's Motion for Summary Judgement is GRANTED with respect to the adequacy of the CIA's search.

ii.     The NSA

Second, Plaintiff alleges the NSA's search was inadequate because it was unsuccessful in locating the prior correspondence Plaintiff sent via email, fax, and letter, and because the declaration submitted by the NSA fails to "identify search terms used, locations searched, and reasons for searching only particular locations."  Opp. at 3.  Plaintiff argues that the declaration is therefore insufficient for the court to properly assess the adequacy of the search.  Id.  The court disagrees.

First, as discussed with respect to the CIA, a search's failure to identify single items of correspondence will not, in of itself, render a FOIA search inadequate.  Hamdan, 797 F.3d at 771-772.  Moreover, pursuant to protocol, the NSA does not conduct a search for prior correspondence from the requester as part of a regular FOIA search unless the requester specifically asks that the NSA do so, or provides additional "amplifying" information in their FOIA request.  Suppl. Kuntz Decl. ¶ 2.  Plaintiff made no such request in this case.  Id.  Accordingly, the NSA contends that the lack of correspondences found in connection with the search is typical given the Agency's standard search procedures.

Second, the NSA submitted "relatively detailed, non-conclusory" declarations sufficient for the court to find that it conducted a reasonable and adequate search of its records upon receiving Plaintiff's FOIA request.  See Papa, 281 F.3d at 1013.  In response to Plaintiff's argument that the NSA failed to identify the search terms it used or the locations it searched, the Agency submitted a second, supplement declaration including these details.  See Suppl. Kuntz Decl., Dkt. No. 32.  The supplemental declaration explains that the NSA used Plaintiff's name and social security number as the search terms, identifies the locations the NSA searched, and provides the

1  reasons that it searched those particular locations.  Id.  ¶¶ 2-4.  Both declarations explain that NSA

2  searched the PeopleSoft database system for all "applicant, personnel, medical and training

3  records," among other things.  Kuntz Decl. ¶¶ 31-34, Kuntz Supp. Decl. ¶ 3.  The NSA Deputy

4  Associate Director for Policy and Records further explains that, based on her knowledge and

5  experience, "such a search was reasonably calculated to uncover any documents pertaining to

6  Plaintiff" because this database was most likely to contain any non-intelligence information about

7  individuals affiliated with the NSA.  Kuntz Decl. ¶ 32; see also Kuntz Supp. Decl. ¶ 2.

8  　　　In sum, the NSA described with particularity the office responsible for the search, the

9  database it searched, the process it used to search – including the search terms used – and the

10  results of the search.  The NSA's declarations are sufficiently detailed for the court to find and

11  conclude that the Agency executed an adequate search in response to Plaintiff's FOIA request.

12  See Steinberg v. U.S. Dept. of Justice, 23 F.3d 548, 552 (D.C. Cir. 1994).

### iii.　The FBI

14  　　　Finally, Plaintiff argues that the FBI also conducted an inadequate search in response to

15  her FOIA request.  Opp. to Mot. at 2-3.  Plaintiff requested the FBI search "main files," including

16  "numbered and lettered sub-files, 1A envelopes, enclosures behind files, Bulky Exhibits, control

17  files, and 'JUNE files.'"  Opp. at 2.  Plaintiff further requested that any "missing" files pertaining

18  to her be placed on "special locate."  Id.  Plaintiff alleges the FBI did not search all the locations

19  she requested, specifically the Electronic Case File (ECF) system, and consequently the search

20  was inadequate.  Id. at 3; see Hardy Decl. ¶¶ 30, 32.  Plaintiff's argument is unpersuasive.

21  　　　The Ninth Circuit requires that plaintiffs who request records under FOIA must do so with

22  enough specificity that the agency can, with a reasonable amount of effort, locate the records

23  requested.  See Marks v. U.S. (Dep't of Justice), 578 F.2d 261, 263 (9th Cir. 1978).  Agencies are

24  not required to meet demands for broad and unspecific FOIA requests.  Id. (quoting Mason v.

25  Callaway, 554 F.2d 129 ("Request for all 'correspondence, documents, memoranda, tape

26  recordings, notes, and any other material' is not reasonably descriptive").  When faced with

27

28  Case No.: 5:15-cv-02308-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

United States District Court
Northern District of California

1    sweeping FOIA requests, an agency's search must make a "good faith effort" to comply with the

2    request, but need not search every location or term specified by the requester.  Id.; Hamdan, 797

3    F.3d at 771-72 (holding that the State Department and the FBI conducted "diligent search[es] for

4    ... documents in the places in which they might be expected to be found," despite not searching

5    every location requested by the plaintiff).

6           Here, the FBI conducted three separate searches in connection with Plaintiff's FOIA

7    request, including an initial search of the CRS for any "main files" related to Plaintiff, a second

8    search of the CRS for "'cross reference' records using variations of Plaintiff's name and

9    identifying information," and a search of the ELSUR for any electronic surveillance records.

10   Hardy Decl. ¶¶ 16, 20-23, 26-29; Reply at 5.  As a result of these searches, the FBI located 44

11   pages of documents responsive to the request.  Hardy Decl. ¶¶ 6; 20-23.   However, Plaintiff

12   argues that the FBI should have also searched the ECF system, and its failure to do so renders the

13   search inadequate.  Opp. at 3.  The court disagrees.

14          The declaration submitted by the FBI explains that "the FBI generally does not conduct

15   full text searches of the ECF system in responding to FOIA and Privacy Act requests as this

16   extraordinary measure is unduly burdensome and/or not reasonably calculated to locate responsive

17   records."  Hardy Decl. ¶ 31.  Notwithstanding the burdensome nature of the search, the FBI may

18   nevertheless conduct an ECF search when "(a) a search of the CRS locates no records but the FBI

19   has reason to believe that responsive records likely exist; or (b) a search of the CRS results in

20   some records being located, but there is information indicating that more specific responsive

21   records likely exist."  Id. ¶ 32.  Neither situation exists here.  The CRS search did locate certain

22   documents responsive to Plaintiff's request, but the FBI identified nothing in those documents or

23   its other records to suggest that additional responsive information would result from another

24   search.  Id.  The FBI therefore determined that "a full text search" of ECF was not warranted.  Id.

25          Based on the information contained in the record, the court finds that the FBI conducted a

26   diligent search that was reasonably tailored to uncover documents responsive to Plaintiff's request,

27

28   Case No.: 5:15-cv-02308-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
     SUMMARY JUDGMENT

United States District Court
Northern District of California

13

1   which it succeeded in doing.  Accordingly, the FBI met its obligations under FOIA and

2   Defendants' Motion is GRANTED with respect to the adequacy of the FBI's search.

3   **B.   The CIA and NSA's "Glomar Response"**

4          As a general matter, FOIA "calls for broad disclosure of Government records." <u>CIA v.</u>

5   <u>Sims</u>, 471 U.S. 159, 166 (1985).  However, recognizing that disclosure of certain information

6   possessed by the government "is not always in the public interest," Congress provided nine

7   exemptions to FOIA's broad disclosure policy, enumerated in Title 5 U.S.C. Section 552(b).  <u>See</u>

8   <u>Pickard v. Dep't of Justice</u>, 653 F.3d 782, 785-86 (9th Cir. 2011); (quoting <u>ACLU v. U.S. Dep't of</u>

9   <u>Defense</u>, 628 F.3d 612, 618 (D.C.Cir. 2011)).  These exemptions are to be narrowly construed.

10  <u>U.S. Dep't of Justice v. Julian</u>, 486 U.S. 1, 8 (1988).  If the requested information falls into one of

11  the nine exemptions, the agency is permitted to withhold the records.  In certain cases, an agency

12  may also assert what is known as a "Glomar Response," and neither confirm nor deny the

13  existence or nonexistence of requested records, where it determines that the fact of the records'

14  existence or nonexistence is classified under a specific FOIA exemption.  <u>Hunt</u>, 981 F.2d at 1118;

15  <u>Gardels v. C. I. A.</u>, 689 F.2d 1100, 1103 (D.C. Cir. 1982) ("[A]n agency may refuse to confirm or

16  deny the existence of records where to answer the FOIA inquiry would cause harm cognizable

17  under an [sic] FOIA exception."); <u>see also</u> <u>Phillippi v. CIA</u>, 546 F.2d 1009, 1012 (D.C. Cir. 1976).

18         Here, the CIA and NSA asserted a Glomar Response in connection with any classified

19  records pertaining to Plaintiff. Lutz Decl. ¶¶ 28-33; 24-53; Kuntz Decl. ¶¶ 16-22; 23-29.  Both

20  agencies contend that a Glomar Response is warranted under FOIA Exemption 1 and 3 because to

21  confirm or deny the existence of any such records could reveal classified information that is

22  protected by statutes and Executive Order.  Lutz Decl. ¶¶ 34, 50; Kuntz Decl. ¶ 16; 23; <u>see</u> 5

23  U.S.C. §§ 552(b)(1), (b)(3).  While Plaintiff does not directly challenge the propriety of the

24  agencies' Glomar Response in this lawsuit, the court will briefly address the exemptions invoked

25  by the agencies as the bases for asserting a Glomar Response.  <u>See</u> Opp. at 2-3.

26

27

28

Case No.: 5:15-cv-02308-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### i.   FOIA Exemption 1

FOIA Exemption 1 exempts from disclosure records and information that "the agency has classified as 'secret in the interest of national defense or foreign policy' under criteria established by an Executive Order."  Hunt, 981 F.2d at 1118 (quoting 5 U.S.C. § 552(b)(1)).  In this case, the CIA and NSA contend that the fact of the existence or nonexistence of records that would reveal a classified connection between Plaintiff and the agencies is exempt pursuant to sections 1.4(c) and 3.6(a) of Executive Order 13,526.  See Exec. Order No. 13,526, 75 Fed. Reg. 707, § 3.6(a) (2009).

Executive Order 13,526 specifically provides that an agency may assert a Glomar Response where it determines that "the existence or nonexistence of requested records … is classified under this order or its predecessors."   Exec. Order No. 13,526, 75 Fed. Reg. 707, § 3.6(a) (2009).  Records may be classified under the order only where:

> (1) an original classification authority is classifying the information; (2) the information is owned by, produced by or for, or is under the control of the United States Government; (3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Id. at § 1.1(a).  Recognizing that an agency's assessments regarding potential threats posed to national security will always be somewhat speculative, courts generally find "an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  Wolf v. C.I.A., 473 F.3d 370, 374-75 (D.C. Cir. 2007) (internal citations omitted); see Mosier v. C.I.A., No. 2:13-CV-00744-MCE, 2013 WL 6198197, at *5 (E.D. Cal. Nov. 27, 2013).

Both the CIA and the NSA have submitted declarations sufficient to support their Exemption 1 claims.  Dkt. Nos. 23, 25, 32.  With respect to the CIA, Ms. Lutz is the Information Review Officer ("IRO") for the Litigation Information Review Office and, in that capacity, has original classification authority and is currently "responsible for the classification review of CIA documents and information that may be the subject of court proceedings or public requests for

15

1   information under [FOIA]."  Lutz Decl. ¶ 3.  The CIA asserts that the fact of the existence or non-

2   existence of classified records regarding Plaintiff is properly categorized under section 1.4(c) as

3   "intelligence activities (including covert action), intelligence sources or methods, or cryptology."

4   See 75 Fed. Reg. 707 § 1.4(c).  The declaration submitted by Ms. Lutz explains that

> acknowledging the existence or nonexistence of the requested
> records reflecting a classified connection to the CIA reasonably
> could be expected to cause damage to the national security by
> disclosing whether or not the CIA has or had an intelligence interest
> in Plaintiff or her associates, disclosing whether or not CIA engaged
> in intelligence operations involving her or her associates, and
> indicating to CIA's adversaries how CIA would or would not choose
> to focus its intelligence activities on other individuals.

9

10   Lutz Decl. ¶ 40.  Ms. Lutz further highlights that if the CIA were to acknowledge that it did or did

11   not possess records reflecting a classified connection with a particular individual, in either case

12   this admission "would implicate intelligence sources and methods in a manner harmful to U.S.

13   national security" because it would reveal information about CIA's specific intelligence interests

14   or clandestine intelligence activities.  Id. ¶¶ 41-49.  Accordingly, Ms. Lutz determined that the

15   existence of intelligence records responsive to Plaintiff's FOIA request "is itself a currently and

16   properly classified fact."  Id. ¶ 33.

17        Similarly, the NSA provided a declaration from Ms. Kuntz, the NSA Deputy Associate

18   Director for Policy and Records, in support of its Exemption 1 claim.  First, in accordance with

19   section 1.1(a) of Executive Order 13,526, Ms. Kuntz is a "TOP SECRET original classification

20   authority for the NSA."  Kuntz Decl. ¶¶ 1–2, 16–22.  Second, Ms. Kuntz represents that the

21   information at issued is owned by or in control of the U.S. Government.  Id. ¶ 17.  Third, the NSA

22   asserts that the fact of the existence or non-existence of classified records regarding Plaintiff is

23   properly classified under section 1.4(c) as intelligence activities, sources, or methods; and/or

24   section 1.4(g) as "vulnerabilities or capabilities of systems, installations, infrastructures, projects,

25   plans or protection services relating to the national security."  Id. ¶¶ 16-17; see 75 Fed. Reg. 707

26   §§ 1.4(c), (g).  Finally, in her capacity as Deputy Associate Director for Policy and Records, Ms.

27   Kuntz reviewed Plaintiff's request and explained that

16

> Acknowledging the existence or non-existence of intelligence-related records on particular individuals or organizations … would provide our adversaries with critical information about the capabilities and limitations of the NSA, such as the types of communications that may be susceptible to NSA detection.

Id. ¶ 19.  Ms. Kuntz therefore determined that "[t]his compilation of information, if disclosed, could reasonably be expected to cause exceptionally grave damage to national security."  Id. ¶ 20.

Based on the foregoing, the court is satisfied that each agency met its burden of "proving the applicability" of Exemption 1.  See Wilner, 592 F.3d at 68 (citation omitted).  Both agencies provided detailed declarations identifying and explaining the potential threat to national security posed by confirming or denying the existence or nonexistence of classified records responsive to Plaintiff's request.   Accordingly, the court finds that the CIA and NSA properly asserted a Glomar Response based on FOIA Exemption 1.  See Hunt, 981 F.2d at 1119-21 (approving of the CIA's Glomar Response based on the broad discretion afforded to the agency under FOIA Exemptions 1 and 3); Mosier, 2013 WL 6198197, at *5 (same); Am. Civil Liberties Union v. Dep't of Def., 752 F. Supp. 2d 361, 368 (S.D.N.Y. 2010).  Accordingly, Defendants' Motion is GRANTED as to the CIA and NSA's use of a Glomar Response.

### ii.    FOIA Exemption 3

The CIA and the NSA also contend that their Glomar Response was proper under FOIA Exemption 3.  Exemption 3 addresses "matters that are 'specifically exempted from disclosure by statute' provided that such statute affords the agency no discretion on disclosure, establishes particular criteria for withholding the information, or refers to the particular types of material to be withheld."  Id. (quoting 5 U.S.C. § 552(b)(3)).[2]

However, because the court finds that Exemption 1 justified the agencies' decision to

---

[2] The CIA relies on Section 102A(i)(1) of the National Security Act (as amended, 50 U.S.C. § 3024(i)(1)) and Section 6 of the Central Intelligence Agency Act (as amended, 50 U.S.C. § 3507) as the two bases for its Exemption 3 claim.  Lutz Decl. ¶¶ 51-53.  Similarly, the N.S.A. relies on Section 102A(i)(1) of the National Security Act); Section 6 of the National Security Agency Act of 1959 (as amended, 50 U.S.C. § 3605); and Title 18 U.S.C. § 798 (prohibiting the unauthorized disclosure of communications intelligence) as the three statutory bases for its Exemption 3 claims.  Kuntz Decl. ¶¶ 23-27.  These statutes empower the respective agencies to protect intelligence information, sources, and methods from unauthorized disclosures.

17

United States District Court
Northern District of California

1    assert a Glomar Response, the court need not consider the applicability of Exemption 3 in greater

2    detail.  Wilner , 592 F.3d at 72 (explaining that "[b]ecause defendants need only proffer one

3    legitimate basis for invoking the Glomar response, and FOIA Exemptions 1 and 3 are separate and

4    independent grounds in support of a Glomar response," the court need only consider the

5    applicability of one exemption); Am. Civil Liberties Union v. Dep't of Def., 752 F. Supp. 2d 361,

6    368-69 (S.D.N.Y. 2010) (same); Larson v. Dep't of State, 565 F.3d 857, 862-63, 870 (D.C.Cir.

7    2009) ("[A]gencies may invoke the exemptions independently and courts may uphold agency

8    action under one exemption without considering the applicability of the other.").

9        **C.    The FBI's Withholdings**

10           Unlike the CIA and NSA searches, the FBI's search identified a total of 44 pages of

11   documents responsive to Plaintiff's FOIA request.   Of those 44 pages, ten pages were released to

12   Plaintiff in full, 32 pages were released with partial redactions, and two were withheld in full.

13   Hardy Decl. ¶¶ 4, 53.  The FBI contends that the information was withheld under FOIA

14   exemptions (b)(6), (b)(7)(C), and (b)(7)(E).   Hardy Decl. ¶ 15.

15           Plaintiff challenges the FBI's withholding determinations in two respects.  First, as to the

16   pages released in part, Plaintiff contends that the names and identities of FBI agents and personnel

17   should not have been withheld.  Opp. to Mot. at  5.  Second, as to the two pages withheld in full,

18   Plaintiff argues that "selective redactions should have been made to the responsive pages" and the

19   non-exempt portions of the documents should have then been released.  Id. at 4-5.  Plaintiff argues

20   that the FBI failed to adequately explain "why segregation of the two withheld pages is not

21   possible."  Id. at 4.  Each argument will be addressed in turn.

22        **i.    Partial Withholdings Under FOIA Exemptions 6 and 7(C)**

23           With respect to the 32 pages the FBI released with partial redactions, Plaintiff states that

24   while she "does not object to the redaction of third parties" and non-law enforcement personnel,

25   "she believes the identities of FBI Special Agents and support personnel," specifically the FBI

26   personnel she interacted with, "must be disclosed."  Id. at 5.  The FBI contends that it properly

27

28   Case No.: 5:15-cv-02308-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
     SUMMARY JUDGMENT

United States District Court
Northern District of California

1  withheld such information pursuant to FOIA Exemptions 6 and 7(C).[3]  Hardy Decl. ¶ 15; 5 U.S.C.

2  §§ 552 (b)(6), (7)(C).

3          FOIA Exemption 6 exempts from disclosure "personnel and medical files and similar

4  files" where disclosure of such files "would constitute a clearly unwarranted invasion of personal

5  privacy."  5 U.S.C. § 552(b)(6); Prudential Locations L.L.C. v. U.S. HUD, 739 F.3d 424, 429 (9th

6  Cir. 2013).  Also relying on privacy concerns, Exemption 7(C) exempts an agency from releasing

7  information that is "compiled for law enforcement purposes," where it determines that producing

8  such information "could reasonably be expected to constitute an unwarranted invasion of personal

9  privacy."  5 U.S.C. § 552(b)(7)(C).  In determining whether the disclosure of identifying

10  information constitutes an invasion of privacy sufficient to fall within either Exemptions 6 or 7(C),

11  courts "must balance the privacy interest protected by the exemptions against the public interest in

12  government openness that would be served by disclosure."  Prudential Locations, 739 F.3d at 429.

13  "Where a legitimate privacy interest is implicated, the requester must (1) show that the public

14  interest sought to be advanced is a significant one…and (2) show the information is likely to

15  advance that interest."  Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 172 (2004).

16          Here, the requested records were primarily "comprised of complaints made by Plaintiff on

17  various subjects" and the files generated by the FBI in response thereto.  Hardy Decl. ¶¶ 15, 28 n.

18  9.  The information Plaintiff contends was improperly withheld by the FBI under Exemption 6 and

19  7(C) includes the "names and/or identifying information" of law enforcement personnel contained

20  within records "created in the course of the FBI evaluating and responding to various complaints

21

22  _____

   [3] The FBI also asserts FOIA Exemption 7(E) as a basis for withholdings certain information in
23  response to Plaintiff's request.  Exemption 7(E) exempts agencies from disclosing information that
   is compiled for law enforcement purposes when the release of such information "would disclose
24  techniques and procedures for law enforcement investigations or prosecutions, or would disclose
   guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably
25  be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  However, Plaintiff only
   challenges the FBI's withholding of the identities of FBI Special Agents and support personnel.
26  Opp. at 5.  Because only Exemptions 6 and 7(C) are asserted in connection with this information,
   the court will focus the remaining discussion on the appropriateness of the FBI's reliance on these
27  two exemptions.

   19

28  Case No.: 5:15-cv-02308-EJD
   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
   SUMMARY JUDGMENT

United States District Court
Northern District of California

1   of wrongdoing lodged by [P]laintiff."  Hardy Decl. ¶¶ 15, 29 fn. 9, 40, 47-52; Mot. at 18.  Thus,

2   the documents are of the kind that qualifies for exemption pursuant to Exemptions 6 and/or 7(C).

3   See Prudential Locations, 739 F.3d at 429 ("Government records on an individual which can be

4   identified as applying to that individual" are covered by Exemption 6); Van Bourg, Allen,

5   Weinberg & Roger v. NLRB, 728 F.2d 1270, 1273 (9th Cir. 1984) ("Government records

6   containing information that applies to particular individuals satisfies the threshold test of

7   exemption 6"); Rosenfeld v. Dep't of Justice, 57 F.3d 803, 808 (9th Cir. 2995) (explaining that to

8   satisfy Exemption 7's threshold requirement, a government agency with a clear law enforcement

9   purpose "need only establish a rational nexus between enforcement of a federal law and the

10  document for which [a law enforcement] exemption is claimed."); Sussman v. U.S. Marshals

11  Serv., 494 F.3d 1106, 1115 (D.C. Cir. 2007) (explaining that Exemption 7(C) "protects the privacy

12  interests of all persons mentioned in law enforcement records, whether they be investigators,

13  suspects, witnesses, or informants.).

14      Turning to the second inquiry, the court now considers whether disclosure of the withheld

15  information would constitute an "unwarranted invasion of personal privacy" under either

16  exemption.  To do so, the court must weigh the privacy interests protected by the exemptions

17  against the public's interest in government transparency that would be advanced by the release of

18  the information.  Prudential Locations, 739 F.3d at 429-30.

19      Here, the FBI asserts that the individual privacy of law enforcement agents and support

20  personnel is the interest protected under the exemptions.  Hardy Decl. ¶¶ 39, 46-51. The FBI

21  concluded that law enforcement personnel "had a significant privacy interest in their identifying

22  information," and  determined that "[i]f  disclosed, this information would subject them to

23  compromise, unwarranted harassment, and hostility."  Hardy Decl. ¶¶ 46-51.  Additionally, the

24  FBI argues that the public had no interest in the identity information withheld under Exemptions 6

25  and 7(C) because "it would not significantly increase the public's understanding of the operations

26  and activities of the FBI or the federal government."  Mot. at 19-20.  The court agrees.

27

28  20

Case No.: 5:15-cv-02308-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

United States District Court
Northern District of California

1     The Ninth Circuit has held that "FBI agents have a legitimate interest in keeping private

2  matters that could conceivably subject them to annoyance or harassment." Lahr v. NTSB, 569

3  F.3d 964, 977 (9th Cir. 2009) (quoting Hunt v. FBI, 972 F.2d 286, 288 (9th Cir. 1992)); see also

4  Council on American-Islamic Relations v. FBI, 749 F. Supp. 2d 1104, 1119-20 (S.D. Cal. 2010)

5  (holding that support personnel and non-FBI federal employees have a valid privacy concern).

6  Accordingly, the court finds that there was a nontrivial privacy interests protected by withholding

7  the identifying information of FBI personnel under FOIA Exemptions 6 and 7(C).

8     Conversely, the public interest would not be advanced by the disclosure of the information

9  Plaintiff seeks to uncover from the partially-withheld documents.  Once an agency has identified a

10  reasonable privacy interest, "the only relevant public interest in the FOIA balancing analysis is the

11  extent to which disclosure of the information sought would shed light on an agency's performance

12  of its statutory duties or otherwise let citizens know what their government is up to." Bibles, 519

13  U.S. at 355-356.  An individual's interest in obtaining certain information about himself or herself

14  does not in and of itself create a public interest in disclosure.  Schiffer v. F.B.I., 78 F.3d 1405,

15  1410 (9th Cir. 1996).  That is, to outweigh a compelling individual privacy interests implicated by

16  disclosure, the public interest must be significant and must be "more specific than having the

17  information for its own sake." Favish, 541 U.S.at 172; see Sussman, 494 F.3d at  1115

18  (concluding that "the potential for harassment and potential to prejudice law enforcement

19  personnel in carrying out law enforcement functions … outweighs the public interest" in the

20  disclosure of identifying information); Ramo v. Dept. of Navy, 487 F. Supp. 127, 129, 132 (N.D.

21  Cal. 1979) (denying a plaintiff's FOIA request for identifying information about FBI agents on the

22  grounds that government agencies have a substantial interest in protecting the identities of their

23  agents).

24     Balancing the legitimate privacy interests of FBI personnel against the public interest in

25  the disclosure of the information here, the FBI's privacy interest prevails.  The court finds and the

26  FBI's use of Exemptions 6 and 7(C) was warranted.  Accordingly, the FBI's Motion for Summary

27

28  Case No.: 5:15-cv-02308-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

21

1    Judgement is GRANTED with respect to its partial withholding of the specific names and

2    identifying information about FBI employees.

3            **ii.    Segregability of Two Pages Withheld in Full**

4            Finally, as to the two pages the FBI withheld in full, Plaintiff contends that the FBI failed

5    to adequately explain why any non-exempt, segregable portions of the withheld pages could not

6    have been released.  Id. at 4-5.

7            Pursuant to Title 5 U.S.C. Section 552(b), FOIA demands that "any reasonably segregable

8    portion of a record shall be provided to any person requesting such record after deletion of the

9    portions which are exempt under this subsection."  5 U.S.C. § 552(b).  "Non-exempt portions of a

10   document must be disclosed unless they are inextricably intertwined with exempt portions" to

11   such an extent that "the excision of exempt information would impose significant costs on the

12   agency and produce an edited document with little informational value."  Willamette Indus., Inc.

13   v. United States, 689 F.2d 865, 867-68 (9th Cir. 1982) (citing Mead Data Cent., Inc. v. U.S. Dep't

14   of the Air Force, 566 F.2d 242, 261 (D.C.Cir. 1977)).  It is insufficient for an agency to merely

15   conclude that the document contains no segregable information without explaining the basis for

16   such a conclusion.  Lawyers' Comm. for Civil Rights of San Francisco Bay Area v. U.S. Dep't of

17   the Treasury, No. 07-2590 PJH, 2008 WL 4482855, at *13 (N.D. Cal. Sept. 30, 2008); Mead Data,

18   566 F.2d at 261 (holding that "unless the segregability provision of the FOIA is to be nothing

19   more than a precatory precept, agencies must be required to provide the reasons behind their

20   conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts.").

21   "In addition to a statement of its reasons, an agency should also describe what proportion of the

22   information in a document is non-exempt and how that material is dispersed throughout the

23   document."  Mead Data, 566 F.2d at 261.

24           The Ninth Circuit instructs that district courts should not "simply approve the withholding

25   of an entire document without entering a finding of segregability, or the lack thereof, with respect

26   to that document."  Wiener v. F.B.I., 943 F.2d 972, 988 (9th Cir. 1991); Willamette Indus, 689

27

28

F.2d at 867-68.  In making a determination with respect to segregability, a district court may rely

on an agency's good faith declarations regarding the withholding.  Hamdan, 797 F.3d at 779; Pac

Fisheries, Inc. v. United States, 539 F.3d 1143, 1148 (9th Cir. 2008).  An agency's declarations

that are "sufficiently detailed are presumed to be made in good faith and may be taken at face

value."  Hamdan, 797 F.3d at 779; Hunt, 981 F.2d at 1119.

Here, the FBI submits a declaration from David M. Hardy, the Section Chief of the

Record/Information Dissemination Section ("RIDS") of the FBI in support of its claim that the

two pages were not segregable.  Dkt. No. 24.  The Hardy Declaration represents that RIDS

conducted a "segregability review" of each page of the 44 pages the FBI identified as responsive

to Plaintiff's FOIA request.  Hardy Decl. ¶ 53.  In connection with the review, the RIDS

determined that of the 44 pages identified, "two pages were required to be withheld in their

entirety" because "all information on each page was covered by one or more of the cited FOIA

exemptions; therefore, there was no information that could be reasonably segregated for release

without triggering foreseeable harm to one or more of the cited FOIA exemptions."  Id.

Plaintiff argues that the FBI fails to explain why the withheld documents are not

segregable and thus fails to meet its burden for withholding the documents in full.  The court

agrees with Plaintiff.  The FBI's explanation falls short of the specificity required to justify its

action in this case.  First, the FBI does not identify any specific facts or bases for its conclusion

that there is no non-exempt and reasonably segregable material in the withheld pages, much less

describe how information is dispersed or why segregability would be impractical or unduly

burdensome.  See Hardy Decl. ¶ 53; Mead Data, 566 F.2d at 261.

Second, nowhere does the FBI specifically identify for the court which exemption or

exemptions it invoked as justification for withholding all of the information contained in the two

documents.  The FBI explains that

> Copies of the pages released in part and in full have been
> consecutively numbered 'McCash-1 through McCash-44' at the
> bottom of each page.  Pages withheld in their entirety (e.g., removed
> per exemption) were replaced by a "Deleted Page Information

23

United States District Court
Northern District of California

Sheet," identifying the reason and/or the applicable FOIA exemptions relied upon to withhold the page in full, as well as the Bates numbers for the withheld material.

Hardy Decl. ¶ 36. However, unlike the 32 pages released in part where the FBI specified which exemptions it raised in connection with the redacted material, the record here contains no information as to the reason or the applicable exemptions relied upon to fully withhold the two documents.[4] Instead, the FBI generally asserts that the withheld pages were "covered by one or more of the cited FOIA exemptions," and concludes that "there was not information that could be reasonably segregated..." Hardy Decl. ¶ 53.

This is precisely the kind of conclusory justification courts have regularly deemed inadequate. See Mead Data, 566 F.2d at 261; Willamette Indus., 689 F.2d at 867–68; Lawyers' Comm., 2008 WL 4482855, at *13. An agency may not simply conclude that there is no segregable information without explaining its reasons for such a conclusion. Lawyers' Comm., 2008 WL 4482855, at *13. While the agency is not required to provide "such a detailed justification that would itself compromise the secret nature of potentially exempt information," it must provide some explanation for why non-exempt portions of the documents cannot be segregated and released. Mead Data, 566 F.2d at 261. The FBI has offered no such explanation here.

In sum, the declaration submitted by the FBI lacks the detail and specificity necessary for the court to make any finding on the legitimacy of the FBI's withholding decision or the issue of segregability. Accordingly, Defendant's Motion for Summary Judgement is DENIED with respect to the two pages withheld in full.

---

[4] The FBI cited Category (b)(6)-1 and (b)(7)(C)-1 on the following Bates pages: McCash-1 through McCash-4, McCash-8 through McCash-10, McCash-12, McCash-25, McCash-27, McCash-29 through McCash-31, McCash-33. Hardy Decl. ¶ 47, n. 13. The FBI asserted Category (b)(6)-2 and (b)(7)(C)-2 on the following Bates pages: McCash-5, McCash-8, McCash-13, McCash-22, McCash-23. Id. ¶ 48, n. 14. The FBI asserted Category (b)(6)-3 and (b)(7)(C)-3 on the following Bates pages: McCash-4, McCash-13, McCash-15 through McCash-17, McCash-23. Id. ¶¶ 49-50, n. 15. The FBI asserted Category (b)(6)-4 and (b)(7)(C)-4 on the following Bates pages: McCash-5, McCash-13, McCash-14, McCash-32 through McCash-42. Id. ¶¶ 51, n. 16. The FBI asserted Category (b)(7)(E)-1 on the following Bates pages: McCash-25, McCash-26, McCash-32 through McCash-42. Id. ¶¶ 52, n. 17

Case No.: 5:15-cv-02308-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**IV.    CONCLUSION**

For the forgoing reasons, Defendants' Motion for Summary Judgment (Dkt. No. 22) is GRANTED IN PART and DENIED IN PART as follows:

1.      Defendants' Motion is GRANTED to the extent it is based on the adequacy of all Defendants' searches pursuant to 5 USC §552 (a)(3).

2.      Defendants' Motion is GRANTED as to the CIA and the NSA's use of a Glomar Response pursuant to FOIA Exemption 1, 5 USC §552 (b)(1).

3.      Defendants' Motion is GRANTED as to the FBI's partial withholdings pursuant to FOIA Exemptions 6 and 7, 5 USC §§ 552 (b)(6), (b)(7)(C).

4.      Defendants' Motion is DENIED as to the two documents the FBI withheld in full.

The court schedules this action for a Case Management Conference at 10:00 a.m. on December 8, 2016.  The parties shall file a Joint Case Management Conference Statement, or separate statements if appropriate under Civil Local Rule 16-9, on or before December 1, 2016.

**IT IS SO ORDERED.**

Dated: November 10, 2016

_____
EDWARD J. DAVILA
United States District Judge

25